IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KLAMATH-SISKIYOU WILDLANDS              Case No. 2:09-cv-2252-JAM-GGH
CENTER, ENVIRONMENTAL
PROTECTION INFORMATION CENTER,          ORDER DENYING PLAINTIFFS'
KLAMATH FOREST ALLIANCE,                MOTION FOR PRELIMINARY
                                        INJUNCTION

        Plaintiffs,

    v.

J. SHARON HEYWOOD, Shasta-
Trinity National Forest
Supervisor, and UNITED STATES
FOREST SERVICE,

        Defendants.
_____/


    This matter comes before the Court on Plaintiff Klamath-

Siskiyou Wildlands Center, Environmental Protection Information

Center, and Klamath Forest Alliance's (collectively

"Plaintiffs") motion for preliminary injunction.  Pls' Mot. for

PI, Doc. # 23 ("Pls' Mot.").  Defendants J. Sharon Heywood, the

Shasta-Trinity National Forest Supervisor, and the United States

Forest Service ("FS" or "Forest Service") (collectively "Defendants") oppose the motion.  Defs' Opp., Doc. # 39.  A hearing was held on this matter in this Court on September 16, 2009.  Having considered the parties' submissions and arguments, and for the reasons set forth below, Plaintiffs' motion is DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In June of 2008 a lightening storm sparked fires across northern California, including the Shasta-Trinity National Forest.  Administrative Record ("AR") 2b, p.1.  On the South Fork Management Unit of the forest more than 70 fires developed from this storm, two of which were wildfires in the Trough Creek watershed.  Id.  These two fires burned approximately 3,630 acres of forested lands.  Id.  Immediately following the fires, Forest Service resource specialists began evaluating conditions in the project area.  Id.  FS experts evaluated, inventoried, surveyed, mapped, and analyzed post-fire conditions in the Trough Project ("Project") area, and provided recommendations for developing the proposed action.  Id.  After engaging in a public process, the Forest Service issued a final Decision Memorandum ("DM") for the Project on August 10, 2009.  The Project involves salvage harvest of dead and dying trees on approximately 200 acres that experienced moderate and high severity fire, reforestation in those areas, construction of 0.4

mile of temporary road, and removal of hazard trees, under the authority of the categorical exclusion for salvage harvest, 36 C.F.R. § 220.6(e)(13).  The Chief of the Forest Service made an Emergency Situation Determination (ESD) for the Project, and noted that delaying harvest of the Project until after the 2009 operating season could cause the burned timber to lose an estimated $98,000 in value.  Defs' Opp. at 1.  The actual value of the awarded contract is $63,100.  Id.

Plaintiffs allege that the decisions to authorize the Project and issue an ESD violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et. seq., the National Forest Management Act ("NFMA"), 16 U.S.C. § 1604 et seq., and the Appeals Reform Act ("ARA"), 16 U.S.C. § 1612.  In the instant motion, Plaintiffs seek a preliminary injunction halting the Forest Service's implantation of the Trough Project on the Shasta-Trinity National Forest.  Pl's Mot., Doc. # 23.

II.  OPINION

A.  Legal Standard

To obtain a preliminary injunction, a plaintiff must demonstrate four elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) that the balance of equities tips in their favor, and (4) that the injunction is in the public interest. Winter v. NRDC, 129 S. Ct. 365, 374 (2008).

B.  Scope of Review

The Administrative Procedure Act ("APA") provides the authority for the Court's review of decisions under NEPA and NFMA.  Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008).  Under the APA, an agency decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(s)(A); see Ecology Ctr., Inc. v. Austin, 430 F.3d 1057, 1062 (9th Cir. 2005).  "Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency."  Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147, 1156 (9th Cir. 2006).  Rather, the Court "will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, has entirely failed to consider an important aspect of the problem, or offered an explanation 'that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Id.

C.  Governing Provisions

The National Forest Management Act (NFMA), 16 U.S.C. §§ 1600 et seq., provides both procedural and substantive requirements.  Procedurally, it requires the Forest Service to develop and maintain forest resource management plans.  Id. §

4

1604(a).  After a forest plan is developed, all subsequent
agency action, including site-specific plans, like the Trough
Project challenged here, must comply with NFMA and the governing
forest plan.  Id. § 1604(i); see Lands Council II, 537 F.3d at
989.

    The National Environmental Policy Act (NEPA), 42 U.S.C. §§
4321 et seq., contains additional requirements.  NEPA is a
procedural statute that does not "mandate particular results,
but simply provides the necessary process to ensure that federal
agencies take a hard look at the environmental consequences of
their actions."  Neighbors of Cuddy Mountain v. Alexander, 303
F.3d 1059, 1070 (9th Cir. 2002) (internal quotation marks
omitted).  To carry out the "hard look" requirement, NEPA
requires all federal agencies to prepare a detailed
Environmental Impact Statement ("EIS") for "every recommendation
or report on proposals for legislation and other major Federal
actions significantly affecting the quality of the human
environment."  42 U.S.C. § 4332(2)(C).  Under Council of
Environmental Quality ("CEQ") implementing regulations, an
agency as a preliminary step may prepare an Environmental
Assessment ("EA") to determine whether the environmental impact
of the proposed action is significant enough to warrant an EIS.
See 40 C.F.R. § 1508.9; Nat'l Parks & Conservation Ass'n v.
Babbitt, 241 F.3d 722, 730 (9th Cir. 2001).  If an EA

establishes that the agency's action "*may* have a significant effect upon the . . . environment, an EIS must be prepared." Id. (internal quotation marks omitted) (alteration in original) (emphasis in original).

However, an agency does not have to prepare an EIS or an EA if the action to be taken falls under a categorical exclusion ("CE"). See Sierra Club v. Bosworth, 510 F.3d 1016, 1019 (9th Cir. 2007) (citing 40 C.F.R. § 1508.4). Pursuant to CEQ regulations, "each agency is required to identify categories of actions which do not individually or cumulatively have a significant effect on the human environment." Id. (citing 40 C.F.R. §§ 1507.3(b)(2)(ii), 1508.4). The CE procedures developed by agencies "shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect," 40 C.F.R. § 1508.4, in which case an EIS or an EA would be required.

D.   Likelihood of Success on the Merits

Based on the evidence, oral arguments, and supporting case law, Plaintiffs have not demonstrated a likelihood of success on the merits. Under the CEQ regulations, which were promulgated pursuant to NEPA, each agency is directed to identify "categorical exclusions" which are categories of actions which do not, individually or cumulatively, have a significant effect on the human environment and therefore, do not require an EA or

EIS.  40 C.F.R. § 1508.4.  Consistent with the CEQ regulations, the Forest Service promulgated a categorical exclusion as set forth in its August 2009 Decision Memorandum ("DM") for the Trough Fire Recovery Project.  The Proposed Action will salvage approximately 200 acres within the Trough Fire perimeter and will remove only dead and dying trees.  In addition, approximately 0.4 mile of temporary road is needed to access units 1, 7, and 16 for the Project.  DM at 3.  This decision was based on a thorough review of the relevant scientific information, a consideration of opposing views, and the acknowledgement of incomplete or unavailable information, scientific uncertainty, and risk.  DM at 3.

Plaintiffs argue they are likely to succeed on the merits that a categorical exclusion should not apply because the Project is a major federal action having a significant effect on the environment.  Specifically, Plaintiffs assert there are ten possible significant effects: (1) cable yarding will affect soil resources; (2) logging within Riparian Reserves; (3) creating 10-foot-long skid trails that will gouge soils; (4) soil erosion associated with road construction; (5) exacerbating cumulative watershed effects (6) logging of some green tress; (7) logging of snags larger than 20 inches diameter breast height; (8) possible effects to spotted owls as a result of misrepresenting the applicable science; (9) the possible significant effects

from the cumulative effects of the Trough fire suppression activities and the proposed salvage logging; and (10) the possible significant effects from a violation of law (i.e. using an ESD for a CE). All of Plaintiffs' concerns, however, were thoroughly evaluated and explained by the Forest Service and a determination was made by the FS experts that there would be no significant environmental effects.

When an agency decides to proceed with an action in the absence of an EA or EIS, the agency must adequately explain its decision. Alaska Ctr. For the Env't v. United States Forest Serv., 189 F.3d 851, 859 (9th Cir. 1999). "An agency cannot avoid its statutory responsibilities under NEPA merely by asserting that an activity it wishes to pursue will have an insignificant effect on the environment." Id. (quoting The Steamboaters v. FERC, 759 F.2d 1382, 1393 (9th Cir.1985)). "The agency must supply a convincing statement of reasons why potential effects are insignificant." Steamboaters, 759 F.2d at 1393. To determine whether agency action is arbitrary or capricious, a court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment." Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). Once the agency considers the proper factors and makes a factual determination on whether the impacts

are significant or not, that decision implicates substantial agency expertise and is entitled to deference.  <u>Greenpeace Action v. Franklin</u>, 14 F.3d 1324 (9th Cir. 1992).

The issue, then, is whether Plaintiffs are likely to be successful in their argument that the Forest Service did not consider the proper factors in making its determination of the significance of the Trough Fire Recovery Project.  This Court has carefully considered the parties' moving papers, their arguments at the September 16, 2009 hearing, the Project DM, and the entirety of the administrative record.  Employing the deferential standard of review, which this Court must when reviewing factual conclusions within the agency's expertise, the Court concludes that Plaintiffs are unlikely to demonstrate that the Forest Service did not consider the relevant factors, review possible extraordinary circumstances related to the proposed action, and properly determine that the project activities will have no significant individual or cumulative effect on the human environment.

Here, the Forest Service reasonably relied on its own experts' analysis in determining that the Project will have no effect on the northern spotted owl ("NSO") and that there are no extraordinary circumstances related to the NSO.  AR 48; AR 11. The FS maintains that the Project will not remove any "suitable NSO habitat."  The definition of suitable habitat for NSO is a

habitat with conifer stands that have moderate to high canopy

closure (60%-90%) and high structural diversity.  AR 48, p.5, 7;

AR 33, p. 3.  The Trough fire severely burned stands in the

Project treatment units so that they no longer have the green

canopy closure threshold of at least 40% needed to qualify as

suitable nesting, roosting, and foraging habitat for NSO.  AR

48, p. 7, 9, 16; AR 11 p. 9-10, AR 33, p. 3-4.  The Forest

Service also completed surveys in the planning area and did not

find any owls.  Further, the FS set forth their determination

that the project activities will have no effect on any federally

listed threatened or endangered terrestrial or aquatic wildlife

species or botanical species in the Wildlife Biological

Assessment, the Wildlife Sensitive Species Biological

Evaluation, the Biological Evaluation for Forest Service

Sensitive Botanical Species and Supplementary Botany Report, and

in the Biological Assessment/Biological Evaluation for

Threatened Endangered, Proposed, and Sensitive Fish Species, all

of which were incorporated by reference in the DM.

      The Forest Service also analyzed the effects on

hydrological resources and reasonably concluded that the Project

would not cause significant water quality effects, individually

or cumulatively.  AR 33, p.1; AR 63.  The Forest Service

determined that there is a greater threat of soil erosion if no

action is taken and that the Project will actually have a net

positive effect on soil conditions and therefore, will not have an adverse effect on the watershed.  AR 2b, p. 6; AR 63, p. 1; AR 33, p. 1, 7, 9-11.  This is evidenced in the Hydrology Report, which was also incorporated by reference in the DM.

In response to Plaintiffs' assertion that there is no information in the administrative record regarding the environmental consequences of the fire suppression activities, Defendants adequately highlight that the record does demonstrate that the FS considered the cumulative effects of fire suppression.  The Forest Service asserts that the effects to the environment caused by both the Trough Fire along with the effects of any fire suppression activities were part of the "post-fire environmental baseline" to which the Project may add additional effects.  AR 33, p.1.  Several specialist reports acknowledged the need to design fire suppression strategies, practices and activities to minimize effects on riparian areas. AR 50, p. 4; AR 61, p. 32 and AR 60, p. 51, 54; see also AR 45, p. 4-56.  In addition, the Trough Hydrology Report discusses the time frame for recovery related to fire suppression activities and states that the current condition cumulative watershed effects analysis model was run in November 2008 and incorporated the effects on the landscape from the 2008 fire season.  AR 63, p. 9-10.

Considering the steps taken by Defendants, it is unlikely Plaintiffs will be able to prove that the Forest Service did not adequately consider the unique characteristics of the Project area, the degree to which effects on the quality of the environment were controversial or the risks were unknown, the degree to which the CE might establish a precedent for future actions with significant effects, the degree to which the actions might affect endangered species, and whether there existed cumulative impacts from other related actions.  40 C.F.R. § 1508.27(b).  Accordingly, this Court finds that Plaintiffs are unlikely to be successful in proving that the Forest Service unreasonably concluded the Project will not individually or cumulatively have a significant effect on the human environment.  The Forest Service's DM and scientific evaluations of the Project provide reasoned responses to all of Plaintiffs' challenges and Plaintiffs were unable to show a likelihood of any clear error in judgment on the part of the Forest Service in implementing the CE.  As such, this Court finds that Plaintiffs have not met their burden of proof in demonstrating a likelihood of success on the merits.  Because Plaintiffs have failed to demonstrate the first element in the four factor test for a preliminary injunction set forth by the Supreme Court in Winter v. NRDC, this Court declines to reach

the other three factors.  Plaintiffs' motion for preliminary injunction is DENIED.

D.  <u>Plaintiffs' Claims Regarding the ESD are Unlikely to Succeed</u>

The Appeals Reform Act ("ARA") directs that implementation of projects is to be stayed during the administrative appeal process unless the Chief of the Forest Service determines that an "emergency situation exists." 16 U.S.C. § 1612(note), subsection (e).  The ARA regulations define the phrase "emergency situation" to include a situation "that would result in substantial loss of economic value to the Federal Government if implementation of the decision were delayed."  36 C.F.R. § 215.2 (2003).

Plaintiffs argue that an "emergency situation," as defined in the Appeals Rule, cannot include a decision that is categorically excluded under 36 C.F.R. § 220.6(e) from the requirement to prepare an EA or EIS.  Compl., Count 8; Pls' Mot. at 19-20.  The basis for Plaintiffs argument is that because 36 C.F.R. § 215.10 does not mention decision memoranda, an ESD cannot be applied to a categorically excluded project.

An Agency's interpretation of its own regulation "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."  <u>Alaska Ctr.</u>, 189 F.3d at 857; <u>see</u> <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997).  The Forest Service's interpretation that an ESD can apply to a

categorically excluded project is likely not "plainly erroneous."   Here, the history of the Appeals Rule explains why a decision memoranda for an ESD is not included within the language of the categorical exclusion 36 C.F.R. § 215.10.   At the time the rule was promulgated, CE projects were not subject to the Rule's notice, comment and appeals process.   It was not until 2005, with the Court's decision in <u>Earth Island v. Pengilly</u>, 376 F.Supp. 2d 994, 1004-05 (E.D. Cal 2005), that ARA's appeal requirements were applied to certain CE projects.   This Court recognizes that the <u>Pengilly</u> injunction was recently vacated by the Supreme Court's decision in <u>Summers v. Earth Island Inst.</u>, 129 S.Ct. 1142 (2009).   However, the Forest Service Deputy Chief for the National Forest System instructed that an appeal opportunity is to be provided for categorically excluded timber sale projects that had already been initiated before the injunction was vacated.   <u>See</u> July 23, 2009 Memorandum from Deputy Chief Joel D. Holtrop.   Thus, future categorically excluded decisions will not be subject to appeals, and an ESD would not be necessary to expedite the implementation of such a project.   However, for decisions issued under the <u>Pengilly</u> injunction, the Forest Service reasonably interpreted the Court's Order in <u>Pengilly</u> to require that all provisions of the Appeals Rule, including ESD provisions, applied to CE projects.

14

Moreover, Plaintiffs' theory that ESDs do not apply to CEs is inconsistent with the regulation's definition of an "emergency situation," which is a situation on National Forest System Land "that would result in substantial loss of economic value to the Federal Government if implementation of the decision were delayed."  36 C.F.R. § 215.2.  Here, the Chief of the Forest Service made an ESD for the Project, and noted that delaying harvest of the Project until after the 2009 operating season could cause the burned timber to lose an estimated $98,000 in value.  It is reasonable therefore that, if notice, comment, and appeal regulation applies to categorically excluded projects, it does so in its entirety, and thereby provides the exemption from the stay when the Chief determines that an emergency exists.  Accordingly, the Court finds the Forest Service's application of the Appeals Rule to the Project to be reasonable.  As such, Plaintiffs' claims regarding the ESD are not likely to succeed and therefore, the Court will not grant a preliminary injunction on such a basis.

### III. ORDER

For the reasons set forth above, Plaintiffs' motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated: September 24, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE